ARGONAUT INSURANCE COMPANY,
Appellant,

v.

Thomas E. COOPER, judgment
debtor, Respondent,

Ralph W. Talbot, Sheriff of Anoka
County, Respondent.

No. 47612.

Supreme Court of Minnesota.

Jan. 6, 1978.

Buchmeier, Kavaney & Wilcox and J. Patrick Wilcox, St. Paul, for appellant.

Barna, Guzy, Terpstra, Merrill & Giancola, and Gabriel D. Giancola, Fridley, for Thomas E. Cooper.

SCOTT, Justice.

This is an appeal from an order of the district court denying a petition of the Argonaut Insurance Company (Argonaut) for a peremptory writ of mandamus ordering the sheriff of Anoka County to execute upon and sell a certain office building owned by Thomas E. Cooper, a judgment debtor. We reverse.

Appellant Argonaut and respondent Cooper entered into a general indemnity agreement which provided that Cooper would indemnify Argonaut against any and all liability and other expenses which Argonaut might sustain or incur by reason of the various bonds to be given on behalf of the J. Belair Construction Company, Inc. (Belair), of which Cooper was a principal officer. Prior to and again after entering into this agreement, Cooper supplied two financial statements to Argonaut which showed that his personal net worth was somewhat over $500,000. In each of these financial statements, he listed a home and the office building in question as assets. Paragraph 18 of the indemnity agreement provided:

"The Indemnitors hereby waive and abandon, so far as their respective obligations under this agreement are concerned, all rights to claim *any of the property, including the respective homesteads,* as exempt from levy, execution, sale or other legal process under the laws of any state, territory, or possession." (Italics supplied.)

Belair defaulted on various obligations under certain construction contracts for which Argonaut had given bonds. As a result of Belair's defaults, Argonaut became liable for and paid certain claims. A judgment was subsequently obtained against Cooper and pursuant thereto Argonaut requested the sheriff to execute upon the office building and property upon which it is situated. Between the date of signing of the indemnity agreement and the date of the judgment, Cooper's marriage was dissolved. The dissolution decree awarded the office building property to Cooper and the home to his wife. Cooper now claims that a portion of the office building property is his homestead and therefore exempt from levy and execution. There are no allegations of fraud.

Minn.Const. art. 1, § 12, provides in part:
"* * * A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law."

The statutory provisions implementing this constitutional mandate are contained in Minn.St. c. 510, which provides that the house owned and occupied by a debtor as his dwelling and the land upon which it is situated, up to ½ acre as applied to this factual setting, constitute the debtor's homestead, and shall be exempt from seizure or sale for any of his debts. The question before us involves only the office building and part of the property upon which it is situated. The issue therefore is whether Cooper, by executing the general indemnity agreement which contained a waiver of his right to claim any of his property, including homestead property, as exempt and by submitting signed financial statements, is estopped from claiming that this office building property is exempt as his homestead, as against Argonaut which has incurred liability and losses in reliance upon that waiver.

In the first instance, we are dealing with a constitutional right as well as a statutory

right. Both parties agree that the owner of a homestead may waive his homestead rights, even though they be constitutional rights, by an act which evidences an unequivocal intention to do so. See, *Gale v. Hopkins*, 165 Minn. 177, 181, 206 N.W. 164, 165 (1925). Further, in *O'Brien v. Johnson*, 275 Minn. 305, 148 N.W.2d 357 (1967), this court held, inter alia, that commercial, income-producing property could be claimed as homestead property. We have therefore reached the only real issue to be decided in this case—that of waiver and estoppel, as indicated above.

In the case at hand, the trial court found that *Benning v. Hessler*, 144 Minn. 403, 175 N.W. 682 (1920), was controlling. In *Benning*, a confession of judgment was obtained from the plaintiffs. The confession provided that plaintiffs "further waive the right and benefit of any law of this or any other state exempting property, real or personal, from sale on judgment execution." 144 Minn. 403, 175 N.W. 682. On appeal, this court stated:

"Under section 6957, G.S. 1913, the homestead of a debtor and his family is exempt from seizure and sale under legal process on account of any debt not lawfully charged thereon in writing. Does the confession of judgment charge this debt on the property sold? We think not. The waiver contained in the confession binds no specific property. It does not purport to be a charge upon property. It is in terms but a waiver. It describes nothing and creates a lien upon nothing. It cannot be said that the debt sued upon is a charge in writing on the premises in question. It does not subject the homestead to a levy under the execution."[1] 144 Minn. 404, 175 N.W. 683.

The trial court further found that paragraph 18 of the indemnity contract was "but a waiver," since "[n]o specific property was the *subject* of that waiver * * *." Argonaut disagrees with the trial court and contends that the language of the waiver referring to their "respective homesteads"

---

1. The statutory provision to which reference was made has not been amended since the *Benning* decision and is now codified as Minn.St. 510.01.

when coupled with the financial statements given by Cooper constitutes a reference of sufficient specificity so as to create a charge or lien upon specific property, as required by Benning. The reference to "homesteads," it is urged, distinguishes this waiver from the general waiver in Benning, which merely referred to real and personal property.

The trial court also stated that "public policy dictates that a person cannot waive future homestead rights." Again, Argonaut asserts that it is not arguing that the waiver may attach to all homesteads Cooper may acquire in the future, but merely that he has waived his right to this property listed on the financial statements. Since Cooper listed this office building property on the financial statements not as a homestead but as an office building and since Argonaut relied on these financial statements in issuing the bonds, Argonaut contends that the doctrine of equitable estoppel bars Cooper from later claiming this office building property as his homestead.

In rejecting this assertion, the trial court relied upon *Jacoby v. Parkland Distilling Co.*, 41 Minn. 227, 43 N.W. 52 (1889). In that case credit was extended to a debtor in reliance upon a financial statement which listed as part of the debtor's assets certain property which was later claimed as his homestead. The court held that these facts did not give rise to an estoppel. According to Mr. Justice Mitchell, since "the law permits a debtor at any time to select or appropriate out of his property, as exempt, the amount allowed by statute, or to convert non-exempt property into that which is exempt, every one must be presumed to deal with him with reference to the law." 41 Minn. 230, 43 N.W. 52. Justice Mitchell also stated:

> " * * * A debtor in securing a homestead for himself and family, by purchasing a house with non-exempt assets, or by moving into a house which he already owns, takes nothing from his creditors which the law secures to them, or in which they have any vested right. He merely puts his property into a shape in which it will be the subject of a benefi-

cial provision for himself, which the law recognizes and allows." 41 Minn. 229, 43 N.W. 52.

With this we agree, but we distinguish the case at hand from *Jacoby* on the ground that no waiver was involved in that case. All of the surrounding facts here constitute an unequivocal intention to waive any and all exemption rights Cooper had concerning the office building property. This factual setting is also distinguishable from *Benning*. Here we find a commercial transaction between two parties sophisticated in the affairs of business wherein one, in order to secure the required bonds for one of his businesses, agreed to indemnify the other for any losses that it might incur under such bonds. He also waived his constitutional and statutory right to claim any of his property as exempt from execution in the event of a judgment against him under this general indemnity agreement. He further submitted financial statements for the specific purpose of establishing his ability to satisfy any losses incurred under the general indemnity agreement. He clearly listed the office building property as security. It seems unequivocal that in direct reliance upon the waivers of the general indemnity agreement and the amount and nature of the assets disclosed in the financial statements Argonaut issued the bonds under which its liability was incurred. Therefore, under the theory of waiver and estoppel the claim of homestead exemption must fail. We have held that such homestead exemptions may be waived, and in this setting it is clear that Cooper unequivocally intended to do so, even though such waiver did not specifically create a charge or lien on the property as contended. He is now estopped from claiming otherwise.

The trial court's order is therefore reversed, and the case is remanded with directions that the sheriff be directed to levy, execute, and sell the entire office building property pursuant to the execution issued.

Reversed and remanded.

SHERAN, C. J., took no part in the consideration or decision of this case.